Good morning, ladies and gentlemen. The first case for argument is Karamoy v. Holder. Mr. Hagen. Good morning, Your Honor. My name is Larry Hagen. I am the counsel for the petitioners Tina Daisy Karamoy and Jessica Stephanie Karamoy, her daughter. The IJ, the immigration judge, denied their asylum because basically, and she is Indonesian Chinese is her ethnic and background, she was persecuted in the past in her country of Indonesia, we're claiming in three different ways, three different occasions, different ways. First of all, but persecuted by the government? No, she was persecuted and the government did nothing about it. She was sexually assaulted at knifepoint on a tree. The government did nothing about it? Nothing about it. And we have got, Your Honor, there are three country reports we would ask that the court... You mean the government didn't succeed in doing anything or does it condone this harassment of her or what? Well, Your Honor, the government of Indonesia, we asked the Guardian of Australia report and the report of the Human Rights Watch for 2014, current one, they detail persecution of ethnic Chinese and Christians in Indonesia with the ignoring it of the government or the government not doing anything about it. So these are three international and national reports. So she was sexually assaulted at knifepoint on a train because she appeared to be Christian and Chinese. She did not report that to the police? No, she was pretty afraid to do that is what she testified. And she, and also the bank that she worked in, which was owned by Christian Chinese, was attacked and burned to the ground. She had got notice and there was a crowd outside coming out to the bank and she was taken to the office. And also she was on a train again and her, that's where the first assault, sex assault took place, and she was robbed. And her, she had an infant daughter in her hands and her arms in the... Of course, things like that happen in the United States too, right? I assume so, but Your Honor... You assume so? You don't know. Well, I haven't seen them personally, but I acknowledge that they do. But the United States is not listed in the international and national human rights report and human rights watch as ignoring these and permitting them to happen and not doing anything about them, which is what Indonesia is on the report for. So we're pointing out that. We're saying, Your Honor, that she is, she is very, she's had great pain of mind and debilitating emotional distress. That these experiences were so terrifying and traumatic for her that she applied for and finally got U.S. visa, visitor visa, and she came here, fled with her daughter, leaving behind her husband and her family and friends because she was so terrified. This wasn't something just, just sort of an annoyance or some kind of minor irritation. This was something that terrified her enough to make that big decision. The materials you cite that you mentioned, they don't say anything about the government refusing to do anything. Are you looking at the human rights reports, Your Honor? Yeah, in your brief. Well, I don't have them in front of me, but that's my understanding. Well, what's in your brief is more important than in your memory. And you talk, you know, you cite this growing religious intolerance and... Oh yeah, that, I'm sorry, what page is that you're on? But you don't, you don't say anything to suggest that the government is deliberately not protecting, not attempting to protect any of these people. Well, Your Honor, they talk about the Australia report on page 28 talks about the 264 attacks on religious I mean, it doesn't show the government did anything about it. Does the government have a policy of condoning these attacks? I'm looking, Your Honor. It says here in the human rights reports, the government did not always protect the rights of religious and and social minorities. So that is talking about not protecting it. And therefore, there's a difference between not wanting to protect them and not being effective. Well, they may not have been successful. I mean, we have an extremely high crime rate in the United States. That doesn't mean the government is indifferent to crime, maybe ineffectual. That's different. Again, Your Honor, these are these are human rights reports. They don't make these just, you know... So what is the evidence that the government of Indonesia is refusing to protect these people? Well, as I say, Your Honor, a reasonable person reading those reports would conclude that Indonesia is a place where Sunni Muslims and members of the majority persecute Christians and other minorities. So she has good reason to fear persecution. Why would these go on? How could there be more and more of these attacks with no indication? I mean, these agencies are not indifferent. I mean, they're not, they don't just willy nilly make these reports. They only do them when they think that a country is not, that there's persecution going on, and the country's not doing anything about it. Okay, well, thank you. Thank you, Mr. Hayden. Mr. Fiorino. Good morning. May it please the Court, I'm Paul Fiorino for the Respondent. Judge Posner, you hit upon a very key element of this case, and it's the question of whether the government condones or turns a blind eye to the harm against Indonesians. And there's a key fact in the record, on Ms. Karamoy's neighborhood, in her home and the homes of her neighbors. And that's evidence in the record, which we would suggest is substantial evidence for the Board's finding that the government does not willfully ignore harm against Christians in Indonesia. Also important to look at the past persecution claim, what actually happened to Ms. Karamoy, and none of the incidents, either by themselves or in the aggregate, constitute persecution, which is a fairly severe concept. It's a level of harm that's beyond mere harassment and discrimination. And the Board made that finding, and this Court's recognized the finding as well. The essential element, the essential concept is the key between the nasty and the barbaric, and that's what the Court cited in the Yasinski case. With respect to Ms. Karamoy's claim of emotional harm, there's no competent medical evidence in the record that she suffers any type of clinical or mental anguish that would rise to the level of persecution. So we would say that that claim is essentially unsupported. And as for the extra record materials that the petitioner is pointing the Court's attention to, they, if anything, they just signal that there is a And as the Court found in the Halim case, looking at the same country rights report as the Board considered here, there's no systemic pattern or practice of persecution of Christians in Indonesia. So we'd ask the Court to affirm the Board. Before you conclude, let me just make inquiry. This petitioner arrives here eight and a half years ago, and a year later files an asylum application. We don't have a hearing until 12. Yes, Your Honor. So is that just a backlog situation that we're going to have to continue to accept? I don't know about this particular case. I didn't look into the delay in this case. Sometimes there are many reasons for delays. Sometimes it might involve, well, maybe not in this case. I don't know. Maybe the delay is delayed at the door of the petitioner. Then it takes 18 months to get a, on a pretty short record, something from the Board. 18 months out of a court of appeals is not admirable, and it's certainly not admirable in these settings.  And to the extent that you can convey that to those that are processing these matters, it would be helpful. Yes, Your Honor. Because I'm not suggesting a stop will come about here, but we continue to face these cases where, in this case, a pretty early application. We're dealing with a 2014 report. I'm not saying it had to be done in 2009 or 2010, but you're a very able counsel. You've been here before, and I appreciated your advocacy. But it's a concern to me that, as we process these cases, that we have some sense of dispatch, which I don't think was attended to in this matter. Understood, Your Honor. Thank you. And so we would ask the Court to affirm the Board's decision and deny the petition for review. Thank you. Okay. Thank you, Mr. Ferriero. Mr. Hagan, time expired. You have another minute, if you want. Well, Your Honors, the Haleen case, I don't exactly have it right in front of me, but I believe that that quotation about not systemic pattern, I think that's an older case. It's not current. And these reports I'm talking about are 2013 and 2014, so they're current reports. In an older case like that, I don't think it's really – I mean, things change, and things have gotten worse, and things in Indonesia have gotten worse. I don't know why it took so long for her to get asylum, but that was something that – or get a hearing, even, in that interview. And that certainly is something that added to her anxiety and to her mental anguish. So you have no explanation for that gap between application and hearing date? No, Your Honor. I have not found anything. But that added to the anxiety and the mental state of this woman, which is something I'm trying to push. I thought there was a series of continuances that were granted so that your client could gather evidentiary support for her claim. I only did one of those, Your Honor. I'm not clear what you're talking about before that. Well, I don't know if you've represented her throughout, but I thought the record reflected a series of continuances that were granted over the course of four years. I can't really respond. I don't know that. I don't have that information. But I also want to point out, Your Honor, that there is a form of asylum which is called humanitarian, which is – again, would be inhumane, the government says, to keep someone – force someone to go back to a place where she has had such terrible experiences. And again, this is not necessarily based on actions of the Indonesian government. But these things happen. They are permitted. They go on. She has had – she testified calls from her family and friends that they have been – women friends have been raped. Okay. Well, we'll have to stop, Mr. Aikin. So thank you very much. Thank you very much, Your Honor.